# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>LG Cellular Phone<br>Model LM-X21OMA<br>Serial Number LMX210G2062dd1a | )<br>)<br>) Case No. 19MJ25-1<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
A Black LG cell phone, Model LM-X21OMA, Serial Number LMX210G2062dd1a, which is currently held at Mount Airy Police Department, Mount Airy, North Carolina.

located in the ___Middle___ District of ___North Carolina___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Methamphetamine |
| 18 U.S.C. § 924(c)(1)(A) | Possession of a Firearm in Furtherance of Drug-Trafficking |
| 21 U.S.C. § 5861(d) | Possession of an Unregistered Firearm |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jason Zeigler, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/31/19 1:00 P.M.

*Judge's signature*

City and state: Durham, North Carolina

Joe L. Webster, United States Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT

# FOR MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF Android LG, Model LM-X21OMA, GOTA Serial Number: LMX210G2062dd1a CURRENTLY LOCATED AT Mount Airy Police Department, Mount Airy, North Carolina | Case No. 19MJ25-1 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, J. M. Zeigler, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant makes this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. Your Affiant has been employed as Federal Law Enforcement Officer/Agent since 2007.

3. Your Affiant is employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives and has been so employed since 2016. Your Affiant is currently assigned to the Charlotte Division, Greensboro Resident Agency Office of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) as a Special Agent (SA). In this capacity, your Affiant is authorized to investigate matters involving violations of federal law. Your Affiant holds multiple advanced Federal Law Enforcement Certificates issued by the Federal Law Enforcement Training Center (FLETC). Successfully completing the Uniform Police Training

Program (UPTP), The United States Capitol Police (USCP) Police Academy, Criminal Investigation Training Program (CITP), Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent Basic Training (SABT) National Academy. Your Affiant also attended the United States Postal Inspector National Academy.

4. As a Special Agent, your Affiant is authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

5. Your Affiant is currently assisting the Mount Airy Police Department with investigating violations of federal firearm laws. As a result of my training and experience as an ATF Special Agent, I am familiar with Federal criminal laws and know that it is a violation of:

6. Title 18, United States Code, Section 924(c)(1)(A), any person who, during and in relation to any crime of violence or drug trafficking for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime. Title 18, United States Code, Section 5861(d), it shall be unlawful for any person to receive or possess a firearm (IED) which is not registered to him in the National Firearms Registration and Transfer Record. Title 18, United States Code, Section 841(a)(1), it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. These violations took place in the Middle District of North Carolina and occurred on July 03, 2018.

7. The information contained in this Affidavit is based upon the affiant's personal knowledge and observations, interviews with persons, review of government and business records, and of records, reports, and information received from other ATF sources. This

2

affidavit is not intended to convey all the facts of the entire investigation, but rather to establish cause to support the request for a Federal search/seizure authorization.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8. The property to be searched:

    a. Android LG, Model LM-X21OMA, GOTA Serial Number: LMX210G2062dd1a, hereinafter the "Device." The Device is currently located at Mount Airy Police Department, Mount Airy, North Carolina.

9. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

10. On Tuesday, July 3, 2018, units with the Surry County Sheriff's Office, Mount Airy Police Department and North Carolina State Bureau of Investigation were conducting surveillance of the area of White Pines Country Club Road in Mount Airy, North Carolina. While other units in the area watched from concealed locations, SA Stovall stopped his vehicle on George Street and conducted stationary surveillance on White Pines Country Club Road. At approximately 3:00 p.m., Deputy B. Johnson (SCSO) identified a gray van coming from Virginia on White Pines Country Club Road.

11. As the vehicle approached SA Stovall, the van traveled left of center and as SA Stovall turned from George Street onto White Pines Country Club Road, the vehicle continued on White Pines Country Club Road. SA Stovall accelerated and paced the vehicle at approximately 55 miles per hour as the vehicle continued on White Pines Country Club Road. The speed limit on White Pines Country Club Road is 35 miles per hour. The vehicle swayed across the centerline on three separate occasions as the vehicle traveled toward US 52.

3

12. On US 52 S., Detective B. Thomas (SCSO) initiated a traffic stop of the vehicle on US 52 S. The vehicle turned into the parking lot of Mayberry Mall located at 388 Frederick Street, just off US 52 S.

13. During a subsequent search of the vehicle, a suspected Improvised Explosive Device (IED) was located. SA Stovall observed the suspected IED and contacted North Carolina State Bureau of Investigation (NCSBI), Assistant Special Agent in Charge (ASAC), Bomb Technician G. Parsons regarding requesting the bomb squad to render the device safe. A black bag was located on the passenger floorboard, where Glenn SPRINGTHORPE was seated. Affixed on the black bag was a Velcro style patch with the word "G-Spring" embroidered on it. SPRINGTHORPE was observed with a black in color Android LG cell phone in his hand during the stop of the vehicle as officers approached the vehicle. During the subsequent search of the vehicle, the same black in color Android LG cell phone was located on the center console next to the passenger seat where SPRINGTHORPE was sitting.

14. The area of the parking lot was secured by Mount Airy Police Department, while waiting for ASAC Parsons to arrive. The driver of the vehicle, Ashtin Nicole Matthews JOHNSON, was cooperative and expressed her desire to wait at the scene for officers to render the device safe, so she could then take possession of her vehicle.

15. Detective Palmer (MAPD) attempted to advise the passenger, SPRINGTHORPE of his rights, at which time SPRINGTHORPE requested his attorney. SPRINGTHORPE was arrested by the Mount Airy Police Department for possession of drug paraphernalia, to wit: a glass-smoking device, which had been located on his person during a frisk.

16. ASAC Parsons arrived and rendered the IED safe. The device was made of 1 ½ inch galvanized pipe, approximately 8 inches long, with an end cap screwed in each end. The

device contained a gray powder, a darker gray powder, a white substance and paper material. The gray powder was field tested for energetic material and tested positive. The darker gray powder was also tested for energetic material and tested positive. A secondary search of the vehicle by ASAC Parsons located no additional explosive materials. SA Stovall and Detective A. Tillotson (MAPD) finished searching the vehicle and seized a black pouch, along with the black book bag, a Taurus, .40-caliber pistol, SN SHZ02495, approximately 23 grams of suspected methamphetamine, 27.5 dosage units of suspected Lorazepam, other prescription drugs, drug paraphernalia and $702.00 in US currency.

17. Ashtin Nicole Matthews JOHNSON, the driver of the vehicle, was interviewed on Tuesday, July 3, 2018, at approximately 6:10 p.m. by Special Agent (SA) J. Stovall of the NCSBI and Surry County Sheriff's Office (SCSO) Investigator J. Hawks. The interview was conducted at 150 Rockford Street in Mount Airy, North Carolina.

18. JOHNSON said she met SPRINGTHORPE several years ago and the two started a dating relationship in September of 2017. At the time, SPRINGTHORPE was also a user of methamphetamine.

19. JOHNSON and SPRINGTHORPE have lived at 1022 Oak Ridge Road, Cana, Virginia for the past four to five months. The only other person who stayed at the residence sporadically was Makayla Combs, JOHNSON's sister. JOHNSON also had a five-year-old child who sometimes stayed at the residence.

20. SA Stovall then asked JOHNSON about the inside of the residence. JOHNSON had previously spoken about SPRINGTHORPE's workshop in the basement where she thought he had possibly assembled or kept items that might have been used to construct the IED that was

5

located in her vehicle. JOHNSON stated that there were woodworking tools in the basement and that she was allowed to go to the basement.

21. SA Stovall then showed JOHNSON a picture of the device that was seized from the vehicle. JOHNSON stated that she had seen SPRINGTHORPE with parts of the red fuse. SPRINGTHORPE lit part of the red fuse in the yard of the residence, and SPRINGTHORPE had also talked about fireworks at that time. JOHNSON could not remember the exact date of that conversation; however, she remembered that it had been more than a month ago and that SPRINGTHORPE never spoke about blowing anything up at that time.

22. SA Stovall then asked JOHNSON about the methamphetamine found in her vehicle. JOHNSON reluctantly spoke about her knowledge of the distribution of controlled substances in Surry County and stated that her mother, Tracey Matthews, uses methamphetamine.

23. JOHNSON also named Preston Hawks as a source of supply for SPRINGTHORPE. The last time Hawks had dealt with SPRINGTHORPE was "months ago". SPRINGTHORPE also had purchased methamphetamine from Jason Iroler.

24. The interview concluded with JOHNSON talking about Tania Govea who had been to visit SPRINGTHORPE the week prior. Govea is a known source of supply of methamphetamine in Surry County. Govea was at JOHNSON's residence last week and was there to talk with SPRINGTHORPE. JOHNSON could provide no additional details about the conversation or reason for the visit.

25. On July 05, 2018, a search warrant was conducted by the Carroll County Sheriff's Office at 1024 Oak Ridge Road, Cana, Virginia, the rented residence of SPRINGTHORPE and

6

JOHNSON. While conducting a search of this residence, numerous documents were discovered that had explosives recipes on them.

26. On September 12, 2018, SA Jason Zeigler performed a National Firearms Act (NFA) records query on SPRINGTHORPE. The results of the NFA records query indicated that SPRINGTHORPE does not have any devices registered to him.

27. Through training and experience, Your Affiant knows that people involved in criminal acts with other people will often communicate with the other suspects through the use of cell phones. Based upon my training and experience, my participation in drug investigations and my discussions with experienced investigators, prosecuting attorneys, I know that people who deal in illegal controlled substances share various combinations of common characteristics which are listed as follows:

(a) That it is common for persons involved in the illegal drug trade to keep and maintain addresses and/or telephone numbers in books, papers, pagers, caller I.D. devices, any device with electronic store memory to include computers, and cell phones, which reflect names, addresses and/or telephone numbers for their associates in the illegal drug trade.

(b) That it is common for persons involved in the illegal drug trade to take or cause to be taken photographs or videos of them, their associates, their property and their product. And that these persons usually maintain these photographs or videos in their possession.

(c) That it is common for persons involved in the illegal drug trade to commonly conduct a major amount of their business by utilizing telephone systems and normally make frequent calls to direct, supervise and coordinate their activities.

7

28. Furthermore, it is common for individuals to use cellular telephones to access the internet. Access to the internet via a cellular device typically creates a log of items which are viewed and searched on the internet and as such, creates a recorded history. It is further known that this history is rarely completely deleted and that in this browser history, it is probable to believe that this device contains evidence of searches regarding the construction, storage and use of explosive devices. During a July 05, 2018, search warrant execution conducted by the Carroll County Sheriff's Office at 1024 Oak Ridge Road, Cana, Virginia, the rented residence of SPRINGTHORPE; numerous documents were discovered that had explosives recipes on them. It is common practice for individuals to research topics of interest using the web browser on a cellular device. SPRINGTHORPE was found in possession of an IED and later a search warrant conducted at his rented residence produced documents containing recipes on constructing explosive devices. There is a high likelihood of web browser history including explosive recipes on SPRINGTHORPE's phone. Along with web browser history, text messages and photos contained on the phone may also include evidence of explosives.

29. The Device is currently in storage at Mount Airy Police Department, Mount Airy, North Carolina. In Your Affiant's training and experience, he knows that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state, as they were when the Device first came into the possession of the Mount Airy Police Department.

## TECHNICAL TERMS

30. Based on your Affiant's training and experience, he uses the following technical terms to convey the following meanings:

8

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land-line" telephones. A wireless telephone usually contains a "call-log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

9

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and

10

are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

  f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

  g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

31. Based on your Affiant's training, experience, and research, he knows that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In his training and experience, examining data

11

stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

32. Based on your Affiant's knowledge, training, and experience, he knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

33. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

12

c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

34. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

35. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, your Affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

36. WHEREFORE, based on the information presented in the this Affidavit, there is probable cause to believe, that the Device contains evidence of violations of Title 21, United

13

States Code, Section 841(a)(1); Title 18, United States Code, Section 924(c)(1)(A); and Title 21 United States Code, Section 5861(d). Therefore, your Affiant submits that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Jason Zeigler
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me
On January 31, 2019:

_____ 1/31/19 1:08 P.M.
HONORABLE JOE L. WEBSTER
UNITED STATES MAGISTRATE JUDGE

14

## ATTACHMENT A

The property to be searched:

a.  Android LG, Model LM-X21OMA, GOTA Serial Number: LMX210G2062dd1a, hereinafter the "Device." The Device is currently located at Mount Airy Police Department, Mount Airy, North Carolina.

This warrant authorizes the forensic examination of the Devices for identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records, contained in the cellular telephones listed on the search warrant, that relate to violations of 18 U.S.C. § 924(c)(1)(A) and 26 U.S.C. § 5861(d); in the form of:

   a. Photographs, text messages, instant messages, voice recordings, emails, videos, GPS coordinates, stored location information, names and contact information, call logs, and website addresses;

   b. information related to the possession of firearms;

   c. any social media account information and content, including user names and passwords;

2. Evidence of user attribution showing who used or owned the cellular telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, and documents.